UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| MELISSA DASILVA et al., | ) | |
| Plaintiffs, | ) | |
| | ) | 3:10-cv-00381-RCJ-VPC |
| vs. | ) | |
| | ) | |
| WELLS FARGO BANK, N.A. et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

Plaintiffs Melissa DaSilva, Sharon Kvas, and Edmilson DaSilva-Filho (DaSilva's husband) have sued multiple Defendants on multiple causes of action related to the foreclosure of their mortgage. Pending before the Court are Defendant Universal American Mortgage Co. of California's ("UAMC") Motion to Dismiss (ECF No. 5), which Defendant Bank of America, N.A. ("BOA") has joined; Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion to Dismiss (ECF No. 9), which BOA has joined; and BOA's Motion to Dismiss (ECF No. 16). Also pending before the Court are Plaintiffs' Motion for Preliminary Injunction (ECF No. 41) and Motion for Temporary Restraining Order (ECF No. 43). For the reasons given herein, the Court defers ruling on the motions to dismiss and the motion for preliminary injunction, and grants the motion for temporary restraining order. Although the affirmative claims in the Complaint are likely implausible, there appears to be a statutory defect in foreclosure under the sixth cause of action that supports an injunction unless and until it is cured.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiffs allege that on or about April 14, 2006, all three of them jointly made a promissory note to lender UAMC in the amount of $437,982, secured by a deed of trust (the "DOT") under which Stewart Title was the trustee. (*See* Compl. ¶ 17). The public records attached to Wells Fargo's Request for Judicial Notice ("RJN") clarify the facts.[1] On April 3, 2006, DaSilva and Kvas gave a deed of trust to lender UAMC to secure $437,982 of debt under a thirty-year promissory note with real property located at 10770 Cypress Garden Ct., Reno, NV 89521 (the "Property"). (*See* DOT 1–3, ECF No. 8-2). Stewart Title is listed as the trustee, and MERS is listed as the "nominee" and "beneficiary" under the deed of trust, (*see id.* 2), but as the Court has noted many times, MERS is not in fact the beneficiary as a matter of law because it does not own the underlying debt. It is at most an agent of the beneficiary, UAMC. There is no adjustable rate rider accompanying the deed of trust, so presumably the note was at a fixed rate of interest. On that same date, DaSilva and Kvas granted the Property to themselves and DaSilva-Filho as joint tenants for $10. (*See* Deed, ECF No. 8-1). DaSilva-Filho is therefore a joint owner of the Property by virtue of this deed. Because he did not sign the note, he would not be liable on it if he were not married to DaSilva. However, the debt represented by the note is almost certainly a community obligation for which he is liable as a matter of law to the extent of his share of community property. The fact that DaSilva gave DaSilva-Filho a deed in joint tenancy with her (and Kvas) on the very day she signed the note and deed of trust without him—perhaps to avoid an examination of his credit or some other such scrutiny during the loan application process—is practically insurmountable evidence that the debt was incurred to benefit the marital community, even if there were no presumption of a community obligation. *See In re Heilman*, 430 B.R. 213, 217 (B.A.P. 9th Cir. 2010).

---

[1] Plaintiffs object to the RJN's inclusion of the Notice of Default and Election to Sell ("NOD") and the Notice of Trustee's Sale ("NOS") because of alleged inaccuracies in those documents. The documents, however, appear to be authentic and show no signs of forgery or alteration.

On September 15, 2006, all three Plaintiffs signed a Revolving Credit Deed of Trust ("RCDOT"), securing a line of credit of $56,000 with the Property. (*See* RCDOT, ECF No. 8-3). DaSilva and "Edmilson Pereira Da" were listed as the borrowers, and any cosigners of the credit agreement were incorporated as "borrowers" under the RCDOT. (*See id.* 7). All three Plaintiffs signed the RCDOT, with Edmilson signing under the name "Edmilson DaSilva-Filho." (*See id.* 9). All three Plaintiffs are listed as the grantors on the first page of the RCDOT. (*See id.* 1). BOA was the lender, and PRLAP was the trustee. (*See id.* 1).

Plaintiffs neither admit nor deny default but rather argue statutory defects in foreclosure. UAMC alleges a default. (*See* Mot. Dismiss 3:16–17, June 30, 2010, ECF No. 5). On January 22, 2010, LSI, as agent for NDSC, as agent for America's Servicing Co. (Wells Fargo), recorded the NOD as a result of a default in the amount of $16,822.42 on the note secured by the DOT. (*See* NOD 1–2, ECF No. 8-4). On May 28, 2010, NDSC recorded the NOS, identifying a sale of the Property scheduled to occur at 11:00 a.m. on June 22, 2010 at the Virginia St. entrance to the Washoe County Courthouse. (*See* NOS 1–2, ECF No. 8-5).

Plaintiffs sued UAMC, Wells Fargo, BOA, National Default Servicing Co. ("NDSC"), LSI Title Co. ("LSI"), Stewart Title Co., PRLAP, Inc., PNC Bank, N.A. ("PNC"), and Mortgage Electronic Registration Systems, Inc. ("MERS") in state court. Defendants removed to this Court. The Complaint, which is verified, lists eight causes of action: (1) Violation of Nevada Revised Statutes ("NRS") Section 106.260 (Wells Fargo, PNC, UAMC, NDSC, and MERS); (2) Violation of NRS Section 106.270 (Wells Fargo, PNC, UAMC, NDSC, and MERS); (3) Violation of NRS Section 106.290 (Wells Fargo, PNC, and UAMC); (4) Violation of NRS Section 107.073 (Wells Fargo, PNC, and UAMC); (5) Violation of NRS Section 107.077 (Wells Fargo, PNC, and UAMC); (6) Violation of NRS Section 107.080 (Wells Fargo, PNC, LSI, and NDSC); (7) Breach of Contract (UAMC and BOA); and (8) Unjust Enrichment (Wells Fargo).

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly v. Bell Atl. Corp.*, 550 U.S. 554, 555 (2007)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without

1 converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

**B.     Rule 65**

Under Fed. R. Civ. P. 65(b), a plaintiff must make a showing that immediate and irreparable injury, loss, or damage will result to plaintiff without a temporary restraining order. Temporary restraining orders are governed by the same standard applicable to preliminary injunctions. *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*, 181 F. Supp. 2d 1111, 1126 (E.D. Cal. 2001) ("The standard for issuing a preliminary injunction is the same as the standard for issuing a temporary restraining order."). The standard for obtaining *ex parte* relief under Rule 65 is very stringent. *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006). The temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

The Ninth Circuit in the past set forth two separate sets of criteria for determining whether to grant preliminary injunctive relief:

> Under the traditional test, a plaintiff must show: (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). The alternative test requires that a plaintiff demonstrate either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor.

*Taylor v. Westly*, 488 F.3d 1197, 1200 (9th Cir. 2007). "These two formulations represent two

1   points on a sliding scale in which the required degree of irreparable harm increases as the probability
2   of success decreases." *Id.*

3         The Supreme Court recently reiterated, however, that a plaintiff seeking an injunction must
4   demonstrate that irreparable harm is "likely," not just possible. *Winter v. NRDC*, 129 S. Ct. 365,
5   374–76 (2008) (rejecting the Ninth Circuit's alternative "sliding scale" test).  The Ninth Circuit has
6   explicitly recognized that its "possibility" test was "definitively refuted" by *Winter*, and that "[t]he
7   proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely
8   to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary
9   relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"
10  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter*, 129 S. Ct. at 374)
11  (reversing a district court's use of the Ninth Circuit's pre-*Winter*, "sliding-scale" standard and
12  remanding for application of the proper standard).

13        A recent Ninth Circuit ruling relying largely on the dissenting opinion in *Winter* parsed the
14  language of *Winter* and subsequent Ninth Circuit rulings and determined that the sliding scale test
15  remains viable when there is a lesser showing of likelihood of success on the merits amounting to
16  "serious questions," but not when there is a lesser showing of likelihood of irreparable harm. *See*
17  *Alliance for the Wild Rockies v. Cottrell*, No. 09-35756, 2010 WL 2926463, at *5–7 (9th Cir. July
18  28, 2010). As a preliminary matter, to the extent this interpretation of *Winter* is inconsistent with that
19  in *Selecky*, *Selecky* controls. *See Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc)
20  (holding that, in the absence of an intervening Supreme Court decision, only the en banc court may
21  overrule a decision by a three-judge panel).  In any case, the Supreme Court has made clear that a
22  movant must show both "that he is *likely* to succeed on the merits [and] that he is *likely* to suffer
23  irreparable harm in the absence of preliminary relief . . . ." *Winter*, 129 S. Ct. at 374 (citing *Munaf*
24  *v. Geren*, 128 S. Ct. 2207, 2218–19 (2008); *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987);
25  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)) (emphases added). To satisfy *Winter*,

the movant must show that he is "likely" to succeed on the merits. To the extent the *Cottrell* court meant to imply that its "serious questions" standard was a lesser standard than "likely," it would be inconsistent with *Winter* and *Selecky*, which control. This Court must reconcile the cases by interpreting the *Cottrell* "serious questions" requirement to be in harmony with the *Winter*/*Selecky* "likelihood" standard, not as being in competition with it. The movant must therefore show that there are serious questions as to the merits of the case, such that success on the merits is likely. A claim can be weaker on the merits where the amount of harm the injunction will prevent is very great, so long as there are "serious questions" on the merits making success "likely."

### III. ANALYSIS

Four of the first six causes of action are essentially requests for an injunction due to alleged statutory defects in foreclosure. The remaining two of the first six causes of action are claims for damages for statutory violations. The last two causes of action are common-law claims for damages.

### A.   NRS Section 106.260 (Wells Fargo, PNC, UAMC, NDSC, and MERS)

Plaintiffs note that NRS section 106.260 provides for recordation of the assignment of a mortgage:

> 1. Any mortgage or lien, that has been or may hereafter be recorded, may be discharged or assigned by an entry on the margin of the record thereof, signed by the mortgagee or the mortgagee's personal representative or assignee, acknowledging the satisfaction of or value received for the mortgage or lien and the debt secured thereby, in the presence of the recorder or the recorder's deputy, who shall subscribe the same as a witness, and such entry shall have the same effect as a deed of release or assignment duly acknowledged and recorded. Such marginal discharge or assignment shall in each case be properly indexed by the recorder.
>
> 2. In the event that the mortgage or lien has been recorded by a microfilm or other photographic process, a marginal release may not be used and a duly acknowledged discharge or release of such mortgage or lien must be recorded.

Nev. Rev. Stat. § 106.260(1)–(2). There appear to be no reported opinions interpreting this statute. On its face, it does not require recordation of the assignment of a mortgage. The statute simply provides that a mortgage that has been recorded may be discharged by singing a statement of

satisfaction in the margin of the recorded mortgage.

As a general rule, the act of recording a document with a county recorder does not give the document any legal effect aside from putting the world at large on constructive notice of the contents of the filing. Recording systems are in this sense glorified bulletin boards. *See* 11 David A. Thomas, *Thompson on Real Property* § 92.04(a), at 99 (2d Thomas ed., The Michie Co. 1994) ("The American recording systems operate through private initiative. The administrators of American recording systems are essentially data custodians. . . . The government makes no affirmations about the legal effect or even accuracy of the data." (footnote omitted)).[2] Only under a title *registration* system does the government vouch for the validity of a recorded document. *See id.* § 92.01, at 89–90. In the late 19th and early 20th centuries, some states and territories enacted Torrens registration systems, but the systems were failures, and they are no longer generally used even in those states where the systems have not been formally repealed. *See id.* at 91.

One of the "five basic characteristics" of the American recording system is that "instruments are operative without recordation." *Id.* § 92.02, at 93. Another basic characteristic is that recording serves to "perfect the legal priority of transferees named." *Id.* "Perfect[ion]" in this context means the world at large has been put on constructive notice of the interests claimed in the recorded document, regardless of whether, and without vouching for whether, those claimed interests are substantively valid. Generally, recordation is neither required nor "a prerequisite to validity of a transfer . . . ." *Id.* § 92.04(a), at 99. There are local exceptions. *Id.* Section 106.260 does not appear on its face to be such an exception, and there is no case law indicating that it is. The statute simply provides a simple and convenient way to discharge a mortgage by making certain annotations on the recorded copy of the mortgage and re-recording it. Because neither the statute nor the common law

---

[2]Failing to record an interest in land may cause one to lose one's *claim of priority* as against a subsequent bona fide purchaser of the land, depending on the local recording statute, but failure to record does not *invalidate* such an interest altogether.

Page 8 of 14

requires recordation of an assignment of a mortgage to validate it as to the assignee, this cause of action is likely implausible, and the Court will not enjoin sale based upon it.

**B.     NRS Section 106.270 (Wells Fargo, PNC, UAMC, NDSC, and MERS)**

Plaintiffs invoke the next section of the NRS, which provides a method whereby a recorded mortgage may be discharged by the execution of a certificate of discharge presented to the recorded by the mortgagee. *See* Nev. Rev. Stat. § 106.270. This statute, like section 106.260, does not on its face seem to require such an action to discharge a mortgage, and there is no case law on the statute indicating that it does. This cause of action is likely implausible, and the Court will not enjoin sale based upon it.

**C.     NRS Section 106.290 (Wells Fargo, PNC, and UAMC)**

Although a mortgage may be effectively discharged without recordation, if a mortgagee in Nevada fails to record a discharge of a mortgage pursuant to NRS sections 106.260 or 106.270 within twenty-one days of notification of the satisfaction of the debt secured by the mortgage, it is liable to the mortgagor for $500, any actual damages caused, and reasonable attorney's fees and costs. Nev. Rev. Stat. § 106.290(1)–(2). A willful violation of this section of the NRS is a misdemeanor crime. § 106.290(7).

Plaintiffs allege that Wells Fargo, PNC, and UAMC are liable for violating this section. Only UAMC is possibly—not to say plausibly—liable under this section, because it is the only entity Plaintiff alleges to have had its debt satisfied, via the transfer (presumably for value) of its interest in the note to a securitized trust. (*See* Compl. ¶ 26). Wells Fargo is sued in its capacity as a loan servicer (America's Servicing Co.), and PNC is an "unknown entity" only implicated in the Complaint by the fact that America's Servicing Co. sent Plaintiff's counsel a letter indicating that PNC now owned the loan. (*See id.* ¶ 29; *id.* Ex. D). PNC is not alleged to have once owned the interest in the debt and subsequently had that interest satisfied, so section 106.290 cannot apply to that entity. The claim only requires further analysis as against UAMC, and such further analysis indicates that the

claim is implausible against UAMC, as well. The debt here is not alleged to have been "discharged," as the statute contemplates, but only transferred. "Discharged" means "a legal duty is *extinguished*." *Black's Law Dictionary* 530 (9th ed. 2009) (emphasis added). No debt here is alleged to have been extinguished, but only the interest in the debt sold to a third party. This cause of action is likely implausible, and the Court will not enjoin sale based upon it.

### D. NRS Section 107.073 (Wells Fargo, PNC, and UAMC)

This section of the NRS disallows the use of the marginal-notation release method permitted by the preceding sections when the deed of trust has been recorded only on microfilm, and it permits recordation of a discharge upon presentation to the recorder of a certificate of discharge by a trustee. *See* § 107.073. This section does not appear to create any requirements for recording transfers of interests in land, and there appear to be no reported cases interpreting the section. This cause of action is likely implausible, and the Court will not enjoin sale based upon it.

### E. NRS Section 107.077 (Wells Fargo, PNC, and UAMC)

This section of the NRS provides a mortgagor with a cause of action for damages if a beneficiary who is in possession of an original note and deed of trust, as well as a request to reconvey the property, does not deliver the former documents to the trustee or trustor (mortgagor) within twenty-one days of receiving written notice of satisfaction of debt secured by a deed of trust. *See* § 107.077(1). Plaintiffs do not plausibly allege a violation of this section of the NRS for several reasons: (1) Plaintiffs affirmatively allege that the note has been negotiated to a securitized trust, not that it has been directly satisfied by Plaintiffs such that a return of the note to them would be appropriate; (2) UAMC cannot be expected to retain the note after negotiation to a third party, and therefore a condition of the statute is not satisfied; and (3) there is no allegation of any request for the trustee to reconvey title to the trustor (Plaintiffs), nor would such a request make sense, because Plaintiffs allege the debt has been transferred, not "satisfied." This cause of action is likely implausible, and the Court will not enjoin sale based upon it.

### F. NRS Section 107.080 (Wells Fargo, PNC, LSI, and NDSC)

Plaintiffs allege a statutory defect in foreclosure under section 107.080. This statute is in fact the source of the most common statutory defect in foreclosure in this state: the recordation of a NOD by an entity that has not yet been named as the trustee, and without any evidence of agency on behalf of the trustee or beneficiary of the underlying debt at the time of recordation. *See* § 107.080(2)(c).

In this case, the trustee on the DOT was Stewart Title. LSI, as agent for NDSC, as agent for America's Servicing Co. (Wells Fargo), recorded the NOD. Without evidence that LSI, NDSC, or America's Servicing Co. was the trustee, beneficiary, or an agent of one of those entities when LSI filed the NOD, there appears to have been a statutory defect in foreclosure. There is no evidence in the record of a substitution of trustees. Although such a defect alone will not support a claim for damages under a wrongful foreclosure theory in the face of an actual default, *see Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 623 (Nev. 1983), it will support an injunction until the defect is disproved or remedied.

Wells Fargo argues that loan servicers are explicitly allowed to conduct a trustees sale under the DOT, and that persons "authorized to make a sale under the terms of the trust deed" are authorized to record a *NOS* after the three-month period following recordation of the NOD. *See* § 107.080(4). But this does nothing to cure the fact that an improper entity apparently recorded the *NOD*, making a sale impermissible unless and until this is cured. *See* § 107.080(2)(c). Defendants can easily cure this by affidavit of a representative of the beneficiary or trustee at the time of the filing of the NOD that such entity caused LSI, NDSC, or America's Servicing Co. to record the NOD. Alternatively, they could provide evidence showing that one of these entities had been previously substituted as trustee. Or Defendants could simply cause the current beneficiary or trustee file a new NOD. But until Defendants have their "ducks in a row," a statutory defect in foreclosure appears likely. Furthermore, the harm of a sale of the Property will be irreparable and significant. The balance of hardships tips in favor of Plaintiffs, because they face wrongful eviction but Defendants

will only lose time in foreclosing and in fact might gain from a delay in sale because of the fledgling recovery of the housing market. Finally, the public interest in the prevention of improper non-judicial foreclosures is great. Foreclosures affect the property values of all homeowners. The Court will issue a temporary restraining order preventing sale.

### G.    Breach of Contract (UAMC and BOA)

Plaintiffs allege three kinds of breach. First, they allege UAMC and BOA both breached the note and/or DOT by selling the note. (*See* Compl. ¶¶ 51, 55). But the DOT specifically states that the note or a partial interest in it could be sold multiple times without even notifying Plaintiffs. (*See* DOT 11–12).

Second, Plaintiffs allege UAMC and BOA both breached the note and/or DOT by selling the note without recording the transfers. (*See id.*). As discussed, the DOT does not even require notification to the borrowers, much less recordation of the transfer. Nor do the statutes require recordation of such a transfer, and even if they did it would still not necessarily support a breach of contract claim, which is based upon the violation of private rights, not public rights.

Third, Plaintiffs allege UAMC breached the note and/or DOT by including MERS in the DOT without sufficiently explaining MERS' role in trading notes as securities. This is not a claim of breach, but a claim of misrepresentation. In any case, the DOT specifically describes the possibility that fractional interests in the note might be sold without notice to the borrowers. This cause of action is likely implausible, and the Court will not enjoin sale based upon it.

### H.    Unjust Enrichment (Wells Fargo)

In Nevada, the elements of an unjust enrichment claim or "quasi contract" are: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) acceptance and retention of the benefit by the defendant (4) in circumstances where it would be inequitable to retain the benefit without payment. *See Leasepartners Corp., Inc. v. Robert L. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997) (quoting *Unionamerica v. McDonald*, 626

P.2d 1272, 1273 (Nev. 1981) (quoting *Dass v. Epplen*, 424 P.2d 779, 780 (Colo. 1967))).  Unjust enrichment is an equitable substitute for a contract, and an action for unjust enrichment therefore cannot lie where there is an express written agreement. *See Marsh*, 839 P.2d at 613 (citing *Lipshie v. Tracy Inv. Co.*, 566 P.2d 819, 824 (Nev. 1977); 66 Am. Jur. 2d *Restitution* §§ 6, 11 (1973)).

Here, it appears that Plaintiffs entered into a contract with UAMC.  That contract, the DOT, specifies that the note or a partial interest in it can be sold without prior notice to the borrower, and the loan servicer can be changed, in which case the borrowers will be notified. (*See* DOT 11–12). Plaintiffs are suing Wells Fargo here for unjust enrichment in its capacity as a loan servicer (Americas's Servicing Co.).  The allegations here are confusing, however.  Plaintiffs allege they have invested in the Property, but not that they have given this money to Wells Fargo.  They then allege the equitable defense of unclean hands, but Wells Fargo has brought no equitable claim against Plaintiffs.  Plaintiffs then allege an "attempted" unjust enrichment, indicating a prayer for an injunction, not damages.  Plaintiffs do not appear to allege that they conferred any benefit upon Wells Fargo under circumstances where it would be inequitable for Wells Fargo to retain it.  In any case, a contract exists governing the relationship between Wells Fargo as loan servicer and Plaintiffs: the DOT.  This cause of action is likely implausible, and the Court will not enjoin sale based upon it.

## CONCLUSIONS

IT IS HEREBY ORDERED that the Motion for Temporary Restraining Order (ECF No. 43) is GRANTED as follows.  Defendants are enjoined from selling the Property at 10770 Cypress Garden Ct., Reno, NV 89521 until 12:00 p.m. on Wednesday, October 6, 2010.

///

///

///

///

IT IS FURTHER ORDERED that the Court will hold a hearing on the Motion for Preliminary Injunction (ECF No. 41) on the eighth floor of the Bruce R. Thompson Federal Courthouse in Reno, NV at 9:00 a.m. on Wednesday, October 6, 2010.

IT IS SO ORDERED.

ISSUED this 1st day of October, 2010 at 3:30 P.M.

_____
ROBERT C. JONES
United States District Judge